May it please the Court. My name is Lauren Schmoke and I represent the petitioner, Binyam Baltti. At issue today is whether the petitioner has demonstrated eligibility for asylum based on past persecution or a well-founded fear of future persecution on a protected ground and whether he has demonstrated a claim for relief under the Convention Against Torture. The immigration judge held and the Board of Immigration Appeals affirmed that the petitioner testified credibly at a hearing on the merits of his application. The petitioner is a native and citizen of Ethiopia and he's a member of the Majangir tribe. In 2002, he was appointed to government employment and he moved to the capital city in order to negotiate on behalf of his tribe in a water dispute. While he was residing in the capital city, the Ethiopian government ordered five Majangir villages to be burned down. The petitioner didn't personally observe this but he was told about it by his tribe who said that due to the fact that the tribe did not want to relocate in the water dispute, they were specifically targeted by the government for harm. In December of 2003 in the Gambela region, the petitioner witnessed Ethiopian National Defense Forces begin killing a list of 400 Inuak tribe members who were believed to be educated and influential. After three days, the National Defense Forces moved into the petitioner was gathered with living government employees and moved into a military camp. The immigration judge held that he was merely sequestered in this camp. However, he had no communication with the outside. He was not permitted to leave. There was no information about the outside region that was permitted in and he was not permitted to even whisper to other people who were detained in the camp with him. He testified at his hearing that guards stated why had his group been left alive and not executed like the rest. He was detained for 90 days before he was released with instructions to stick to the original story was that the Inuak massacre had occurred due to intra-tribal violence rather than government-sanctioned genocide. The petitioner completely opposes killing and he refused to conform to the intra-tribal violence story which was intended to cause more tension and more violence between tribes in Ethiopia. He continued to work for the government and he came to the was the president of the region. He came with five other men who were chosen as government representatives. At a community meeting, the petitioner was asked about the massacre of the Inuak tribe and he said that the government killed the tribe members according to a list, that the tribe members had been killed in their homes with machetes and the homes were burned in order to mimic intra-tribal violence rather than government violence which uses firearms. He testified that he saw Inuak tribe members attempt to run away and that they were shot and cut out of their bodies with machetes in order to hide the cause of death. Because the petitioner spoke out at this community meeting in Minnesota, he was severely punished when he returned to Ethiopia. He was fired from his position at the Education Bureau. He was forbidden from speaking before the House of Federation. He was fined for his trip to Ethiopia even though this was required by his government employment. He was basically surveilled after he was kicked out of his government housing. It was clear error for the immigration judge to hold that he did not experience past persecution on a protected ground. This court has defined persecution as the infliction or threat of death or injury to one's person or one's freedom on account of race, religion, nationality, particular social group membership, or political opinion. It's well established that persecution is an extreme concept and that minor beatings and brief detentions, even those lasting two to three days, do not constitute persecution even if government officials have political motivations. Both the IJ and the BIA said this was not persecution as defined under the act or by court precedent. Why is that wrong? In the case at hand, the petitioner was detained in the camp for 90 days. That's significantly longer than the two to three days that's in presiding case law like UCBO v. Ashcroft. He was also detained following his witnessing of a three-day massacre. His political opinion is that he opposes killing and any government policy that includes inciting violence among tribes. The Department of Homeland Security said that this was merely a recitation of fact and that he was failing to consider the political climate, but this is a government that's very careful about its image and its potential liability for war crimes, so its retaliation is usually gradual and under the guise of intertribal violence. It's only a matter of time before they're going to find a way to dispose of the petitioner. He couldn't be executed in this camp because of his visibility in his government role, so they held him for 90 days in order to isolate, frighten, and traumatize him into not speaking his political opinion. What about the point that the government makes that there's no distinct social group? That he really is just a group in and of himself? Your Honor, the social group I think is a more specific way to define how he's experienced persecution. We've defined his social group as government officials who've witnessed but opposed genocide. However, I think in this case the size of the net depends on the size of the fish that we're trying to catch here. I think the social group is different from his political opinion because he's viewed as having more information in his society because of his government employment. He's a particular danger to his government because he has double credibility both as a government witness and as an uninvolved witness to the massacre of the Inuit tribe. Granted all of that, but the rules say he has to be being persecuted for certain statutory reasons, and I think your argument is it's because he's of a social group and the government, the BIA and the IJ said, well, there's no distinct group here. If we were to write an opinion agreeing with you, how would we say there's a group? The group is that he has a political opinion and that he is also a former government official and also a witness. The political social group is the most specific way that we can delineate what has occurred here. He was detained for 90 days because of his government employment. His role in the government was to act as the sole representative of the Majangir tribe, so he was very visible as the only person. But is he being, did all this occur because of his political views? I don't think that's what you're arguing or what. I think that if he had had political views that align with the government, they would have released him right away because he would have had no issue with excusing their actions and sticking with the official story. There would have been no reason for him to be detained if he had agreed with the actions of the government that had occurred. What I hear you saying is the main thing that he's being persecuted was and maybe in the future is that he's a witness. He's a witness to some government atrocities. Is that really why you think he has been and will be persecuted? Your Honor, I really believe that it's more specific than that. Not only is he a witness, but he was appointed as a government official and he worked in the government for a number of years. This gives him more credibility in his society and it was also a unique position that came with a lot of visibility in his position, also considering he was residing in the capital. Ms. Shmook, what is the particularized persecution that you allege the facts show he will undergo if he has to go back to his country? Are you inquiring about future persecution, Your Honor? I assume so. I mean, he has a duty to show that he's going to be persecuted when he goes back and our precedent indicates that he has to prove particularized persecution is not only possible but probable, doesn't he? He can base a well-founded fear of future persecution could be a successful claim for asylum. If he's established past persecution, then there's a presumption that there is future persecution. But even for the sake of argument, if he has not demonstrated past persecution, he can base a successful claim. And the past persecution that you refer to is his being prohibited from speaking after he spoke out once and at the next opportunity was not allowed to speak. Is that the evidence that you rely on for us? My evidence that I rely on for past persecution is that he was detained in a military camp for 90 days, that he was prohibited from talking to his family, that he was instructed to follow a story that was not true and not what he believed in, and also that when he returned from speaking his views, that he was permitted from speaking out in the government, that he was surveilled very closely. He lost his government housing. His was in danger for his life and that's why he came to the United States. So if we require him to go back, this will happen again to him and he won't have a place to live? Is that what you think the evidence established is here or is that important? Your Honor, I think that if he can show an objectively reasonable fear that is also subjectively genuine, that he does have a valid future fear of persecution. His objectively reasonable fear of future persecution comes from his credible testimony that his own tribe was massacred due to a water dispute, and it's relevant that there's currently a very serious drought going on in Ethiopia, and also he observed a tribe killed that was not his own. In terms of subjectively genuine fear, the Ethiopian government has a culture of secrecy and this has been reported by Human Rights Watch. They have a tendency to kill anyone who voices a political opinion against them, which is evidenced by the 669 people killed last year in peaceful protests, most of them being civilians. Let me ask you this, your time's running down. In follow-up to Judge Beam's question, seems like the BIA and the IJ put some significance in the fact that these were old events. So much time has gone by that Ethiopia has changed. This is all ancient history. That's my term. They didn't say that. What's your reply to that? My reply to that, your Honor, is that that has not been proven. That it's reported in the country reports and by Human Rights Watch that torture is common in detention, and that is why the petitioner is still proceeding on his claim under the Convention Against Torture. It's been reported that there is torture in detention. It's been reported that Ethiopia has not made any kind of meaningful investigations into these abuses, and the petitioner testified that he believes that he will be detained immediately in the airport. There hasn't been any evidence offered by the government that former government employees are exempt from torture, specifically when they've been in the United States speaking out against their own government. Your client, though, was never subject to torture, correct? I would argue that being detained in the military camp where he was told that there was no reason for him to be alive, that he should have been executed, is a form of psychological torture and also an impermissible restriction on his liberty. Yes, the question is, you know, everybody has their own definition of what's torture, but the point is, was he ever beaten, threatened with death, those kinds of things? He was not beaten, but he was threatened with death. A guard said to him, why was your group left alive when the others were executed? The reason that he was held was because of the high visibility of his political position. As the only member of the Majangir tribe present in the government, it would have been noticeable if he had been executed. That's why he was held and virtually reprogrammed or attempted with reprogramming by the government to follow the story of intertribal violence, which was meant to incite more conflicts between the tribes in Ethiopia. If I may, I don't know, time is getting short, but on the issue of the particular membership in the particular social group, it appears that before the BIA, the social group that you had defined was someone who personally observed the massacre of the Anuak tribe in Gambela. How is that a particular social group? Your Honor, I think that it depends on how you want to define what has happened to him. He was detained because he saw the massacre. If he wasn't there, he would not have been detained. However, he was not executed because of his government position. Thank you. Thank you. Okay. Good morning. Is this Hennis? Yes. May it please the Court, Stephanie Hennis for the respondent. The Court should deny the petition for review in this case because the record does not compel reversal of the agency's conclusion that the petitioner failed to meet his burden to show that he experienced either past persecution on account of a protected ground or a well-founded fear of future persecution on account of protected ground. I'd actually like to begin by focusing on the fact that in terms of the past persecution claim, the immigration judge did make a finding that there was no harm that reached the level of persecution. However, the Board did not address that and instead focused on the fact that whatever past harm the petitioner experienced when he was sequestered in 2003 did not have a nexus to a protected ground. So persecution without a nexus to a protected ground is not a basis for asylum. So you understand protected ground is it? Exactly, Your Honor. So in this case, when petitioner initially appeared in immigration court, his attorney explained that he was proceeding on a political opinion claim. When he had initially filled out his asylum application, he had checked the box for social group and then in proceeding said he was no longer proceeding on that basis. So the immigration judge didn't address the social group because there was no social group in play at that point. When petitioner filed his appeal brief to the Board at that point, he switched to a claim that he said he wasn't raising. He switched to a claim stating that his harm was based on his inclusion in a particular social group that he defined as witnesses who personally observed the massacre of the Anuak tribe in Gambela in 2003 committed by the government of Ethiopia. Now with that... Wouldn't the tribe, wouldn't his tribe be a social group at least generally? And he was claiming because of his tribal connections, he was sort of in the out group and he was being forced to do things that were not let be done because of that? Your Honor, I don't know what the agency would say about his tribal affiliation being a particular social group because it wasn't something that was raised to the Board. Under the INA, a person is required to administratively exhaust their administrative remedies in order to give the Board the opportunity to address something like you've pointed out. But in this case, because that was not the claim that was raised to either the immigration judge or the Board, we simply don't know what the agency would have said about that. And because of that, the INA, under 8 U.S.C. 1252 D.1 mandates that the Court wouldn't have jurisdiction over that question. Well, couldn't we remand it to the Board to take a look under those circumstances rather than affirm them or say they were totally wrong? Just remand for a look based upon the record? No, you wouldn't be able to do that, Your Honor, because the INA says that the the alien has the obligation to raise those issues in the first instance to the Board, and he didn't do that in this case. So he's lost the opportunity to do so based on the terms of the statute. It's been a while since I looked at this. What did he argue to the IJ? You say just political association? Political opinion, yes. He told through counsel, he told the immigration judge that he was proceeding on a political opinion claim. And that is the way that this was framed before the immigration court explains why the immigration judge set out his decision in the way that he did. He was addressing a political opinion claim. And then this is an issue that does sometimes come up in immigration proceedings because we now get to, Your Honors, and the claim has morphed so much that we don't have what the immigration court and the Board would have needed in order to render a decision on that. And so I would ask that the court not simply ask, I would say that this court's precedent and the INA dictate that the court can't remand for the Board to address a completely new basis for asylum that the petitioner could have and should have raised through his attorney when he was in immigration proceedings. But what about the persecution? Why is 90 Days Jail essentially detained in a camp, military camp, with at least some evidence that guards threatened him? Why is that not persecution? Well, so, Your Honor, this is a situation where if the court did on account of a protected ground, it would need to, in that instance, it would need to remand to the Board because the Board did not address the immigration judge's finding that there was no past persecution in this case. The Board's not required to address issues when it doesn't see that they are necessary to address in order to dispose of the case. So in this instance, it did not separately address whether that past harm reached the level of persecution. You're saying we're limited on appeal to the narrow issue of what the BIA decided? Yeah, yes, Your Honor. To the extent that the Board relied on things that the immigration judge found, you can look, it gets termed sometimes in looking behind the Board's decision for perhaps the longer analysis that was in the immigration judge's decision, but it cannot reach an issue that the Board did not actually address. However, if that is, I would distinguish that between your other Honor's concern about a completely different nexus basis. In this nexus, meaning when you had asked about a different basis for harm on account of a protected ground, where that was something that was never raised, the past persecution issue was addressed by the Board, and if it was, I'm sorry, I misspoke, was addressed by the immigration judge. The BIA says, the respondent next contests the IJ's findings regarding the possibility of being persecuted, and then it goes into, you know, subjective and objective, and talks about his fear of Ethiopia, and then it talks about what I asked, which was in light of the passage of time since he spoke out against the government, and then about the 2003 massacre, and so on and so on, entitled to presumption of well-founded fear of persecution. So it looks like they, to some degree, they considered the persecution. They considered it, so when evaluating an asylum claim, the past persecution portion includes not only whether harm reached a certain threshold for persecution, but also whether that harm occurred on account of a protected ground. So perhaps the- Well, that's not what they said. It may have been careless writing, but that's not, they didn't tie the two together. I understand what you're saying, but the paragraph I was looking at only talks about persecution, and not in depth, I'll grant you that. The point of that paragraph, I think- The paragraph, the one that says it has not been shown that the immigration judge's It's on the bottom, next to last paragraph, on page two. It starts with the respondent next contests. Oh, okay, so this is- My point is, they do discuss it in some, to some respect, they do not tie it to the social group that I can see, but they do talk about this passage of time. Okay, I understand what Your Honor is getting at. That paragraph doesn't deal with past persecution, that deals with his separate fear of future persecution. So that's not addressing whether that sequestration that he experienced in 2003 was persecution. It is instead saying he can also make a claim, even if there wasn't any past persecution, on a fear of future persecution. And that's what the board is addressing. Whether or not he's in a social group? I'm sorry? Whether or not he's in some particularized social group? Well, he has the burden of showing that anybody who applies for asylum can establish it based either on a past persecution ground, or based on having a well-founded fear of future persecution. That well-founded fear of future persecution must be on account of a protected ground, and he has the burden of coming forward with evidence- My point is, the protected ground you're saying is being a witness to this massacre and so forth, and speaking out and so forth. Well, skip that. I could read it. It says what it says, but they talk about the passage of time. What does that mean? That has to do with the likelihood of future harm. So, the board's analysis here isn't addressing whether the harm would occur on account of a protected ground. It's getting at whether he's met his burden of showing an objectively reasonable fear of future persecution. And it points to several reasons that that fear is no longer objectively- is not objectively reasonable. They talk about how the massacre that occurred in 2003, there's been the passage of time. And this court has relied on the passage of time as a basis for determining that a person does not have an objectively reasonable fear of future persecution. They also focused on the fact that it's been widely reported at this point that the 2003 massacre was done at the hands of the government. So, it's not like the petitioner in this case has information that the community or that the world essentially has not been told about. There's lots of evidence in the record, the Human Rights Watch, various articles that show that there's been widespread awareness of the he failed to show that similarly situated individuals like himself who recently spoke out against that massacre have been persecuted. And that makes sense. His testimony indicated that between 2003 and 2008, he spoke out against what the government was doing. And while he had come to the United States in 2008, he returned. He says that he's afraid that if he goes back to Ethiopia, as soon as he shows up at the airport, they will find him and harm him. But he was able to get a visa to come to the United States again after he returned in 2008. Using his own name, he went to the airport. He flew to the United States. All of those things came together as a board to determine that there was no objective fear here. I meant to finish the statement you were making, not others. Do I understand that you're arguing from what you were saying a while ago that in his quest to establish a protected interest had been harmed, he had inadvertently or unknowingly offered evidence of violation of harm to another protected harm that he hasn't raised, that we couldn't take that into account? I'm understanding that you keep saying or you kept saying, well, he hasn't raised that. So even if it's true, that's too bad. But if it seems to me if there's evidence of a protected harm that's the statute or the law provides, raised inadvertently, we can take that into account. Wrong? Well, he hasn't. But he hasn't inadvertently raised anything. He's given you the facts of his case. I mean, that's I guess that's for us to analyze with the evidence that was adduced. But if he did, I understood you to say, well, we couldn't take it into account, whether or not he did. He has to actually exhaust his arguments for his basis for asylum, and he hasn't done that in this case, in which case you are correct. The statute, Congress has determined that in that instance, it is something that this court doesn't have the jurisdiction to address. He was given, he filed an asylum application affirmatively, and that was then referred to immigration court. I see that I'm out of time. May I briefly? Get your answer. He had an asylum interview in the asylum office. He then was in immigration court, represented by counsel. He was then represented in front of the board again by counsel. So there has been a lot of opportunity for him to have his claims addressed. And he even had a social group claim addressed by the board, even though he did not raise that in immigration court. So to conclude and answer your question, you are correct that if because there was no race or ethnicity claim raised here, this court does not have jurisdiction to review it and should not remand to the immigration court for that purpose. And I would ask the court to deny the petition for review. Thank you very much. Ms. Schmolk has some time left here. I will be brief. I have just three things on rebuttal. Thank you. I think it's significant that counsel for the government is not arguing that he has not experienced past persecution, but is arguing about the nexus here. His story has been exactly the same since he filed for asylum administratively in his interview, in his statement, and in his testimony before the court. A particular social group, however, is more narrowly tailored than political opinion. So I think it's important because he was detained due to his visibility and not immediately executed. He also has a valid claim for asylum under his future fear of persecution upon returning. But the government's not saying given up on those. It's just saying you didn't exhaust those. And the only thing presented to the BIA and now before us is this social group issue. That's all that's left. He does believe he has a claim on political opinion, although a particular social group may be more specific. If you agree that the claim under a particular social group has not been administratively exhausted, I would agree that it's correct that it should be remanded to the lower court so that that claim can be administratively exhausted. Okay. Do you have anything else? Your Honor, I think that he has also demonstrated a well-founded fear of future persecution due to the torture in detention and the likelihood that he believes that he will be in detention. I also believe he has an independent claim for relief under the Convention Against Torture due to the similar things have been reported by Human Rights Watch. Thank you. We're very grateful to be here arguing in front of you. Okay. Well, thank you both. Thank you both for your arguments. We will take it under advisement and be back to you as where are you from? Silver Spring, Maryland. Pardon me? Silver Spring, Maryland. You've come a long ways. Ms. Schmoke, where are you from? I've walked. Well, thank you both.